1

**WILLKIE FARR & GALLAGHER LLP**
NICHOLAS REDDICK (SBN 288779)
  nreddick@willkie.com
ANIKA HOLLAND (SBN 336071)
  aholland@willkie.com
ISABELLA MCKINLEY CORBO (SBN 346226)
  icorbo@willkie.com
REMY CARREIRO (SBN 359384)
  rcarreiro@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA  94104
Telephone: (415) 858-7400

Attorneys for Plaintiff
RHONDA FLEMING

2

3

4

5

6

7

8

9

10

11

**UNITED STATES DISTRICT COURT**

12

**NORTHERN DISTRICT OF CALIFORNIA**

13

14

RHONDA FLEMING,

Plaintiff,

vs.

UNITED STATES OF AMERICA et al,

Defendants.

Case No. 3:22-cv-05082-RFL

**THIRD AMENDED COMPLAINT**

Ctrm:  15, 18th Floor – San Francisco
          Hon. Rita F. Lin

Complaint Filed:  September 8, 2022
FAC filed:          September 26, 2022
SAC filed:          November 15, 2023
Jury Trial:         Not Scheduled

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Rhonda Fleming ("Ms. Fleming" or "Plaintiff") files this Third Amended Complaint against Defendant United States of America, Defendant William W. Lothrop in his official capacity as Acting Director of the Federal Bureau of Prisons ("BOP"), and Defendant Warden Thahesa Jusino, in her individual capacity.

## INTRODUCTION

1.    For years prior to its abrupt closure, Federal Corrections Institute Dublin ("FCI Dublin") languished with failing infrastructure rife with dangerous and toxic environmental conditions for staff and inmates alike.  During the two years Plaintiff Rhonda Fleming was incarcerated at FCI Dublin, she was exposed to these toxic conditions including mold, asbestos, and excrement from wild geese.  As a result, her health rapidly deteriorated in documented and drastic ways.

2.    Despite Ms. Fleming's repeated attempts to seek help from those responsible for her well-being—namely, staff at FCI Dublin—the BOP failed not only to rectify the environmental conditions at FCI Dublin, but also to provide Ms. Fleming with the healthcare necessary to treat her rapidly worsening physical health.  And when Ms. Fleming attempted to go through the proper channels to seek redress for this denial of healthcare, she was repeatedly denied access to the prison grievance process.

3.    After decades of public scrutiny and ongoing legal action, FCI Dublin abruptly closed its doors in April 2024, transferring all inmates, including Ms. Fleming, to far-flung BOP locations, often hundreds of miles away from their residences and families.  This transfer failed to address in any real way the systemic issues that led to Ms. Fleming's multiple health problems.  Indeed, to this day, Ms. Fleming has not received appropriate medical care for the conditions she developed as a result of her incarceration at FCI Dublin.

4.    Ms. Fleming's entire experience at FCI Dublin was marked with institutional failures. These failures caused her tangible harm and are in violation of the Eighth Amendment's prohibition on cruel and unusual punishment, as well as the Federal Tort Claims Act ("FTCA").  This complaint seeks to remedy these failures through injunctive relief and compensate Ms. Fleming for the immense harm she has suffered at the hands of Defendants.

**JURISDICTION AND VENUE**

5.      This action involves claims arising under the United States Constitution. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1346(b) and authority to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. Ms. Fleming's claims are predicated, in part, upon the FTCA, 28 U.S.C. §§ 2671, *et seq*., authorizing actions seeking relief against the United States.

6.      The Court has personal jurisdiction over the Defendants United States and Thahesa Jusino because the alleged incidents occurred within the confines of the State of California.  The Court has personal jurisdiction over Defendant William W. Lothrop because Defendant Lothrop has minimum contacts with the State of California such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), (e)(1)(B) and 28 U.S.C. § 1402(b) because a substantial part of the events or omissions giving rise to the claims occurred at Federal Correctional Institution, Dublin ("FCI Dublin"), which was, at all relevant times, located in this district.

**THE PARTIES**

8.      Ms. Fleming is a federal prisoner (BOP Register # 20446-009).  She was incarcerated at FCI Dublin from June 22, 2022, to April 19, 2024.[1]  At all times material to this action, Ms. Fleming has been incarcerated in the custody and control of the BOP.

9.      Defendant United States is a governmental entity and is the appropriate defendant for Ms. Fleming's claims under the FTCA.  During the relevant period, the United States, through the BOP and its agents and employees, was in possession and control of FCI Dublin, a federal prison and adjacent satellite camp located in Dublin, California. The United States has waived sovereign immunity as to certain claims, including the claims set forth herein, and is liable for the hiring,

---

[1] From February 6, 2024, through February 17 or 18, 2024,  however, Ms. Fleming was transferred to MDC Los Angeles, in violation of a court order in place in a related case, *California Coalition for Women Prisoners v. United States Federal Bureau of Prisons*, Case No. 23-4155.  *See* Case No. 23-4155,  ECF No. 155 (Order to Show Cause); ECF No. 163 (Plaintiffs' Response).

retention, training, supervision, management, discipline, and conduct of all BOP personnel pursuant to FTCA, 28 U.S.C. § 2674.

10.    At all relevant times, Defendant United States, acting through the BOP, was responsible for enforcing the rules of the BOP and for ensuring BOP personnel obey the Constitution and laws of the United States.

11.    At all times relevant to this Complaint, FCI Dublin was a federal female low-security correctional institution with an adjacent minimum-security satellite camp located at 5701 8th Street, Dublin, California.  In April 2024, federal officials confirmed that the facility would no longer serve as a women's prison, leading to the transfer of more than 600 inmates, including Ms. Fleming, to other facilities nationwide.[2]  On December 4, 2024, Congressman Mark DeSaulnier announced the permanent closure of FCI Dublin.[3]

12.    Defendant William W. Lothrop is the Acting Director of the BOP as of January 20, 2025, and is sued in his official capacity.  Pursuant to Federal Rule of Civil Procedure 25, should Defendant Lothrop cease to hold office while this action is pending, his successor shall be automatically substituted as a party.

13.    Defendant Thahesa Jusino was the warden of FCI Dublin from February 2022 to September 2023, and is sued in her individual capacity.

**FACTUAL ALLEGATIONS**

I.    **FCI Dublin's Dangerous and Toxic Environmental Conditions Were Well-Documented For Years Prior to the Prison's Closure.**

14.    Toxic environmental conditions and deficient medical care have been serious, systemic problems in BOP facilities generally—and at FCI Dublin in particular—for decades. Defendants were aware of these problems yet failed to take action.

---

[2] *FCI Dublin closing, women transferred to prisons across U.S.*, KTVU Fox 2 San Francisco (April 16, 2024), *available at*: https://www.ktvu.com/news/fci-dublin-closing-women-transferred-elsewhere.

[3] https://desaulnier.house.gov/media-center/press-releases/congressman-desaulnier-statement-permanent-closure-federal-correctional.

THIRD AMENDED COMPLAINT
Case No. 3:22-cv-05082-RFL

15.    FCI Dublin has been the subject of intense public scrutiny in recent years.  The prison made headlines when whistleblowers revealed the institution's "rape club" culture of rampant sexual assault.  Eight corrections officers, including a former warden and the prison's chaplain were charged in federal court for sexually abusing dozens of incarcerated women.[4]   Five of these employees have pleaded guilty and two were convicted at trial, including the former warden, Ray Garcia.  *See United States v. Garcia*, No. 4:21-cr-00429-YGR (N.D. Cal.) (sentenced to 70 months in prison and 15 years of supervised release following jury trial).

16.    This scrutiny also revealed FCI Dublin's egregious living conditions.  Whistleblower allegations and media reports detailed the unsanitary environmental conditions prisoners were exposed to including: mold, asbestos, and walkways blanketed in excrement from wild geese.[5]

17.    It is well established that these environmental conditions are harmful to human health.  Indeed, there is "no 'safe' level of asbestos exposure for any type of asbestos fiber.  Asbestos exposures as short in duration as a few days have caused mesothelioma in humans."[6]  Mold exposure presents similar dangers, and has been linked to "upper respiratory tract symptoms, cough, and wheeze in otherwise healthy people; with asthma symptoms in people with asthma; and with hypersensitivity pneumonitis in individuals susceptible to that immune-mediated condition."[7] Exposure to "animal feces has been associated with diarrhea, soil-transmitted helminth infection, trachoma, environmental enteric dysfunction, and growth faltering."[8]  Bird excrement in particular

---

[4]  *See Two More Dublin Federal Correctional Officers To Plead Guilty To Sexually Abusing Multiple Female Inmates*, U.S. Attorney's Office, Northern District of California Press Release (July 14, 2023), *available at:*  https://www.justice.gov/usao-ndca/pr/two-more-dublin-federal-correctional-officers-plead-guilty-sexually-abusing-multiple.

[5]  *See, e.g.*, *Congressman calls toxic conditions at Dublin prison 'a disgrace,'* KTVU Fox 2 San Francisco (February 23, 2023), *available at:*  https://www.ktvu.com/news/congressman-fired-up-over-toxic-conditions-at-dublin-prison

[6]  *Asbestos*, Occupational Safety and Health Administration, available at: https://www.osha.gov/asbestos, (last accessed January 17, 2025).

[7]  *Mold*, Center for Disease Control, *available at:* https://www.cdc.gov/mold-health/about/index.html, (last accessed January 17, 2025); *see also Mold and Your Health*, National Institute of Environmental Health Sciences, *available at:* https://www.niehs.nih.gov/sites/default/files/health/materials/mold_508.pdf, (last accessed January 17, 2025).

[8]  Penakalapati, Gauthami et al., *Exposure to Animal Feces and Human Health: A Systematic Review and Proposed Research Priorities*, Environmental Science & Technology Vol. 51, 20, (2017), https://pmc.ncbi.nlm.nih.gov/articles/PMC5647569/.

4

can carry life-threatening diseases including histoplasmosis, a lung infection that can lead to meningitis.[9]

18.    In response to whistleblower complaints filed in 2022 by officials of the prison workers' union, the U.S. Office of Special Counsel determined that FCI Dublin violated OSHA standards by exposing staff and inmates to asbestos.[10]    Despite assurances from the Justice Department that the "new Warden has shown commitment to ensuring that these types of complaints and any other similar issues are adequately addressed," FCI Dublin failed to remediate the toxic environmental conditions at the prison, including the asbestos problem.[11]

19.    Indeed, in February and March of 2024, independent environmental consulting and remediation firm Titan Environmental Solutions conducted mold and asbestos surveys of the FCI Dublin facilities and found both toxins to be present.    Specifically, the mold investigation revealed visible water damage and mold spores throughout the surveyed areas.[12]    Asbestos was similarly found throughout Unit C's roof, interior, and HVAC ducts.[13]

20.    During the ongoing litigation of a federal class action addressing the rampant culture of sexual abuse at FCI Dublin, the Honorable Judge Gonzales Rogers visited the prison and observed firsthand "mold, the lack of hot water for showers in some of the units, and repeated

---

[9]    About Histoplasmosis, Center for Disease Control, (April 24, 2024), *available at:* https://www.cdc.gov/histoplasmosis/about/index.html#:~:text=Histoplasmosis%20is%20a%20lung%20infection,treatment%20helps%20prevent%20severe%20infections.

[10]    *See, e.g.*, *OSC Validates AFGE's Complaint of Asbestos Contamination at FCI Dublin in Report to White House, Congress*, AFGE, (November 27, 2023), *available at:* https://www.afge.org/article/osc-validates-afges-complaint-of-asbestos-contamination-at-fci-dublin-in-report-to-white-house-congress/.

[11]    *See, e.g.,* Office of the Deputy Attorney General Letter to the Office of Special Counsel Re: Investigation Regarding Whistleblower Disclosures Relating to Bureau of Prisons, Federal Correctional Institution Dublin, *available at:* https://osc.gov/Documents/Public%20Files/FY23/DI-22-000356;%20DI-22-000357;%20DI-22-000358/DI-22-00356,%20000357,%20000358%20%20Agency%20Report%20Redacted.pdf.

[12]    *See Titan Environmental Solutions Limited Preliminary Mold Assessment Report*, (March 11, 2024), available in Case No. 23-4155,  ECF No. 246-1.

[13]    *See Titan Environmental Solutions Asbestos-Containing Materials Survey Report*, (March 14, 2024), available in Case No. 23-4155,  ECF No. 246-1.

THIRD AMENDED COMPLAINT
Case No. 3:22-cv-05082-RFL

refrains about the lack of warmth during the winter months."[14]  This visit resulted in the appointment of a Special Master to supervise FCI Dublin—the first such appointment in BOP's history.

21.    On April 15, 2024, after countless news reports documenting the myriad of problems at FCI Dublin—including toxic environmental conditions—BOP officials announced they would close the prison.[15]  Instead of remedying the prison's environmental and cultural problems, the BOP abruptly transferred individuals incarcerated at Dublin, including Ms. Fleming, to various other federal prisons throughout the country.[16]

22.    The BOP's failures to provide safe environmental conditions at FCI Dublin created an unconscionable risk to Ms. Fleming's health and in turn caused her very real harm, in violation of federal law and the United States Constitution.

## II.    The BOP Failed To Protect Ms. Fleming From Toxic Environmental Conditions at FCI Dublin Which Directly Caused Serious and Worsening Health Conditions.

23.    Ms. Fleming was transferred to FCI Dublin on June 22, 2022, and remained there until April 19, 2024.

24.    As soon as Ms. Fleming arrived at FCI Dublin, her health began to rapidly deteriorate due to the prison's hazardous environmental conditions, including black mold, friable asbestos, contaminated water pipes, and excrement from wild geese that roamed the facility grounds.

25.    Ms. Fleming was exposed to these conditions, without protection, every day of incarceration at FCI Dublin.  For example, each day Ms. Fleming was forced to walk through piles of bird feces to reach the Food Services building in order to eat her daily meals.  The amount of excrement was so copious that it was tracked into the building and through the prison's Housing Unit, leaving Ms. Fleming without an escape from feces wherever she went.

---

[14] *California Coalition for Women Prisoners v. United States Federal Bureau of Prisons*, Case No. 23-4155.  *See* Case No. 23-4155, ECF No. 222 (Order Granting The Motion For Class Certification).
[15] *FCI Dublin closing, women transferred to prisons across U.S.*, KTVU Fox 2 San Francisco (April 16, 2024), *available at*: https://www.ktvu.com/news/fci-dublin-closing-women-transferred-elsewhere.
[16] *Feds Abruptly Close East Bay Women's Prison Following Sexual Abuse Scandals*, KQED (April 15, 2024), *available at*: https://www.kqed.org/news/11982973/feds-abruptly-close-east-bay-womens-prison-following-sexual-abuse-scandals.

THIRD AMENDED COMPLAINT
Case No. 3:22-cv-05082-RFL

26.     Ms. Fleming could find no relief from environmental toxins while within the prison buildings.  FCI Dublin's dilapidated infrastructure led to flooding and damp conditions that fostered the growth of visible, black mold.  Ms. Fleming witnessed this mold in the showers, ceiling tiles, floor tiles, and on the prison's walls.

27.     In fact, one of Ms. Fleming's own cells at FCI Dublin, Cell 191, contained a 5 to 6 inch wide hole under the sink, which exposed visible yellow wall insulation, torn drywall, rotting wood, and visible mold in the area where the water pipes connected to the sink.  Ms. Fleming's cellmate, Donya Wells (BOP #96953-408) also experienced issues clearing her throat, a runny nose, and mild headaches since moving into Cell 191 and believed it to be related to the hole in the wall under the sink containing mold.  During Ms. Fleming's time in this cell, the hole was never repaired.

28.     FCI Dublin was also rife with asbestos, as confirmed in a report from the Office of the Special Counsel.[17]  Ms. Fleming and other inmates witnessed friable asbestos in her own cell, as well as in other areas of the prison, including in the floor tiles, pipe insulation, and ceiling tiles.  Despite this known presence of asbestos, FCI Dublin staff continued to have the floor tiles buffed, thereby releasing asbestos into the air.

29.     The dangers presented by FCI Dublin's crumbling infrastructure continued, as Ms. Fleming was forced to drink and shower in water that was contaminated as a result of broken pipes.  When these pipes broke, sewage would mix with drinking and bathing water.  Ms. Fleming estimates this occurred around ten times during her incarceration at FCI Dublin. Each time she would experience symptoms such as an upset stomach, diarrhea, headaches, and skin rashes that were most pronounced on her chest, back, and other areas where water from a shower would hit most forcefully.  A fellow inmate, Linda Expose (BOP #77203-097), was even hospitalized after drinking contaminated water.  When Judge Gonzalez Rogers visited FCI Dublin and its Satellite

---

[17]*Office of the Deputy Attorney General Letter to the Office of Special Counsel Re: Investigation Regarding Whistleblower Disclosures Relating to Bureau of Prisons, Federal Correctional Institution Dublin*, (December 2, 2022), *available at:* https://osc.gov/Documents/Public%20Files/FY23/DI-22-000356;%20DI-22-000357;%20DI-22-000358/DI-22-00356,%20000357,%20000358%20%20Agency%20Report%20Redacted.pdf.

THIRD AMENDED COMPLAINT
Case No. 3:22-cv-05082-RFL

Camp on February 14, 2024, she found that only four out of the eight showers were in service, and of these four showers, two had lukewarm water while the remaining two had only cold water.[18]

30.    Judge Gonzalez Rogers' visit also revealed FCI Dublin's lack of adequate heating during the middle of winter.  The Court had to order the prison to provide two blankets to each inmate, "given the lack of heat in certain portions of [FCI Dublin] facilities."[19]  During the winter, Ms. Fleming was exposed to air temperature in the 40-degree Fahrenheit range in her cell, while conditions were significantly worse in the Special Housing Unit (SHU).  Beyond lacking heating, the SHU was also plagued with damp conditions and standing water. As discussed *infra* at ¶¶ 52-56, Ms. Fleming was placed in the SHU in January 2024, after her testimony in the class action case.  When she left the SHU, she required a wheelchair because she could no longer walk.

31.    All of these hazards and toxic conditions caused significant harm to Ms. Fleming's health.  Although she had experienced some breathing difficulties while at FCI Tallahassee, these difficulties quickly escalated following her arrival at FCI Dublin. Ms. Fleming's health rapidly declined as she experienced the following symptoms: chronic sinusitis, asthma, coughing spasms, headaches, shortness of breath, extreme fatigue, eye irritation, memory problems, and stomach and muscle pain.

32.    Ms. Fleming's respiratory health was damaged so intensely that she was diagnosed with asthma and eventually put on medication designed to treat chronic obstructive pulmonary disease ("COPD"), an irreversible and progressive disease with no cure.

33.    Ms. Fleming's symptoms, which she experiences to this day, have significantly diminished her quality of life.  She is awoken multiple times each night with coughing fits, and rarely is able to sleep for more than a few hours at a time.  Ms. Fleming used to be an avid runner and would run five to six miles, six days a week.  She is no longer able to run at all.  She has gained significant weight, going from wearing clothing in a size small to a 2X size.  In addition, Ms. Fleming is experiencing 30% hair loss, despite there being no history of such hair loss in her family.

---

[18] Case No. 23-4155,  ECF No. 157
[19] Case No. 23-4155,  ECF No. 157

THIRD AMENDED COMPLAINT
Case No. 3:22-cv-05082-RFL

34.     These consequences of Ms. Fleming's symptoms have significantly diminished her self-esteem and quality of life.  She further suffers from emotional pain arising from the fear that her long-term exposure to environmental toxins will lead to even more severe conditions down the line.

35.     To make matters worse, Ms. Fleming was thwarted in her repeated and consistent attempts to seek sufficient healthcare for these environmentally-caused conditions.  Throughout August 2022, Ms. Fleming repeatedly emailed then-Warden Jusino to discuss her worsening health conditions.  For example, on August 5, 2022, Ms. Fleming emailed Warden Jusino to describe her health status, writing "I am coughing all night.  I am unable to sleep more than an hour at a time because I wake up coughing and choking." *See* Exhibit 1.

36.     On August 15, 2022, Ms. Fleming again sent an email to Warden Jusino stating that she was "coughing more and more" every day, with her "breathing getting worse."  Exhibit 2.

37.     On September 3, 2022, Ms. Fleming contacted Warden Jusino again to plead that she be removed from the toxic environment at FCI Dublin that included "mold, asbestos, and bird dander/feces."  She further expressed her feelings about her constant exposure to these unsafe and unhygienic contaminants without proper medical care: "I have been crying, literally, shedding tears out of fear for my life, not to get cancer, for medical relief."  Warden Jusino did not respond for a month. Exhibit 3.

38.     Despite these constant requests and her worsening health, Ms. Fleming did not receive adequate healthcare while at FCI Dublin. She was not treated by specialists, nor given a comprehensive health exam to get to the bottom of her symptoms. Nor was she removed from the contaminants causing her respiratory distress.

39.     Ms. Fleming was briefly seen by a pulmonologist while at FCI Dublin, but the pulmonologist stated that he could not offer treatment until further testing was done.  When further testing was finally scheduled, she was informed she would only be allowed to go to the test if she was shackled.  Ms. Fleming's custody status at the time did not require her to be shackled when leaving the prison, and no explanation was provided as to why she could only go to her test if she

was shackled.  When Ms. Fleming, pursuant to her custody status, did not consent to shackles, she was denied access to the appointment.

40.    BOP, and specifically Warden Jusino, were on notice of both the presence of environmental toxins and Ms. Fleming's resulting health issues, and yet the agency failed to mitigate the toxins, remove her from their presence, or provide adequate healthcare.  As a result of these acts and omissions, Ms. Fleming's health has been severely damaged.

**III.    Ms. Fleming Took Extensive Steps To Access the Prison Grievance System, But Was Thwarted By BOP Officials' Inattentiveness and Intimidatory Tactics.**

41.    Throughout her time at FCI Dublin, Ms. Fleming repeatedly attempted to access the prison grievance process to compel BOP to provide her with proper medical care, but she was denied access to the required forms. Staff consistently refused to provide Ms. Fleming blank administrative grievance forms or refused to accept filled-out forms.

42.    To exhaust grievances at FCI Dublin, incarcerated individuals had to go through a multi-step process that required requesting multiple administrative forms from BOP staff and then filing them in a particular order. Under 28 C.F.R. § 542.13(a), which governs the administrative remedy procedure, inmates had to first present an Informal Resolution using a BP-8 form, which was reviewed by the Unit Team.  Then, if the complaint was not resolved, the inmate could submit a Request for Administrative Remedy (BP-9 form) to the Warden.  If that request was denied, the inmate could appeal to the Regional Director by submitting a Regional Administrative Remedy Appeal form (BP-10), and if denied again, the inmate could appeal to the Central Office, National Inmate Appeals Administrator using a BP-11 form.

43.    Ms. Fleming endeavored to comply with this onerous process.  In June and July of 2022, she repeatedly asked her Unit Manager, Mr. Busio, for grievance forms both verbally and by email, but Mr. Busio never provided her with these forms.  On July 5, 2022, Ms. Fleming emailed Warden Jusino regarding her inability to access the grievance process.

44.    On August 19, 2022, Ms. Fleming again emailed Warden Jusino stating, "I need grievance forms.  I do not want to be alone with any BOP employee to ask them for grievance forms because I was assaulted by a BOP employee the last time I requested grievances."  Exhibit 4.

10

45.    Ms. Fleming had good reason to fear being forced to privately request grievance forms from BOP employees. On March 24, 2022, while at FCI Tallahassee, Ms. Fleming was assaulted by BOP staff when she requested a grievance form. After requesting a form, Case Manager McMillian hit Ms. Fleming in the chest, and then claimed Ms. Fleming had been the aggressor, despite a report from another staff member, Counselor Foor, confirming that Ms. Fleming made no physical contact with Case Manager McMillian. Still, Ms. Fleming was retaliated against: she was placed in segregation, lost good time credits, and was subjected to a disciplinary transfer to FCI Dublin.

46.    Ms. Fleming followed up about her grievance in an August 19th email, alerting Warden Jusino that "Since I have been at FCI-Dublin, we cannot obtain grievance forms." She further explained that the unit manager had called her and offered to provide her with a BP-9 form, but not the informal grievance form, the BP-10 form, nor the BP-11 form—all three of which Ms. Fleming needed. Ex. 4.

47.    In an email to Warden Jusino dated September 14, 2022, Ms. Fleming expressed her concern that she was forced to remain in the presence of friable asbestos and mold, despite her worsening respiratory health. She then indicated more challenges with accessing grievance forms, writing: "I asked for the 8 ½ form and was laughed at by Mr. Busio. I gave up on obtaining the correct form. It is physically dangerous for an inmate to keep asking for grievances. Mr. Busio knew that submitting a BP-9 without first submitting an 8 ½, the BP-9 would be rejected." *See* Exhibit 5.

48.    Indeed, restricting access to the grievance process appears to have been a common practice at FCI Dublin. After her visit to FCI Dublin, Judge Gonzales Rogers noted that "inmates appeared to have no access to routine processes, such as the forms to file administrative grievances."[20]

49.    The Special Master's June 5, 2024 report similarly found that inmates "were not able to readily obtain the BP-9 forms, Administrative Remedy Request form," and that to "file a remedy

---

[20] Case No. 23-4155, ECF No. 222 at 9.

THIRD AMENDED COMPLAINT
Case No. 3:22-cv-05082-RFL

at any level, the [inmate] had to request the form from staff and justify the need for the form which had a chilling effect on the process as [inmates] were fearful of retaliation."[21]  Even the Acting Warden "agreed that the Administrative Remedy system at FCI-Dublin was broken and did not provide [inmates] with a reliable method to raise issues and complaints, and lacked the ability for effective resolution at the lowest level possible."[22]

50.    Ms. Fleming similarly took sufficient steps to exhaust her FTCA claim.  On July 11, 2022, she submitted a "Standard Form 95" to the BOP,  claiming damages for personal injuries due to inhaling "friable asbestos, excessive toxic mold, and bird feces throughout the prison." *See* Exhibit 6.  By January 11, 2023, six months after Ms. Fleming submitted the form, the BOP had neither accepted nor rejected the claim.  Ms. Fleming considers this failure to act as a final denial of her claim.  *See* 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.").

51.    Pursuant to 28 U.S.C. § 1346(b), Defendant United States is liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the Ms. Fleming in accordance with the law of the place where the act or omission occurred."

52.    Defendant United States is vicariously liable for the acts and omissions of its employees under California's respondent superior principles. At all relevant times, officers were acting within the scope of their employment. Their acts and/or omissions are engendered by their work and are a generally foreseeable consequence for their employer. Officers abused their powers for their own benefit, and imposing liability on the Government would "compensate [their] victims, spread the loss, and stimulate the government to greater vigilance in controlling aberrant behavior." *See Xue Lu v. Powell*, 621 F.3d 944, 949 (9th Cir. 2010).

---

[21] Wendy Still, *First Report of the Special Master Pursuant to the Court's Order of March 26, 2024*, U.S. Bureau of Prisons Federal Correctional Institution, Dublin, p. 8 (June 5, 2024), *available at:* https://www.courthousenews.com/wp-content/uploads/2024/08/fci-dublin-still-report-real.pdf.
[22] *Id*. at 68.

THIRD AMENDED COMPLAINT
Case No. 3:22-cv-05082-RFL

53.     Ms. Fleming took extensive steps to grieve her claims, but Defendants repeatedly failed to provide her any meaningful access to the grievance process, thus making the process unavailable to her.  *See Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (finding "[a]n inmate is required to exhaust only *available* remedies" and remedies were not available where forms had to be requested from a prison official by an inmate and were never provided to the plaintiff, despite his "repeated complaints.").  Despite this unavailability, Ms. Fleming still attempted to grieve her FTCA claim, yet failed to receive any response from the BOP.

**IV.     Ms. Fleming Was Retaliated Against For Complaining About the Environmental Conditions and Lack of Access to Appropriate Medical Treatment.**

54.     Ms. Fleming was not just barred from accessing the prison grievance system—she was punished for bringing attention to the toxic environmental conditions and inadequate medical care at FCI Dublin.

55.     Each time Ms. Fleming attempted to bring awareness to misconduct at FCI Dublin, she faced retaliatory action in response.  In September of 2022, Ms. Fleming met with individuals from the Federal Bureau of Investigation and the United States Attorney's Office regarding the investigation into rampant sexual abuse at FCI Dublin.  After this meeting, she received an email from Warden Jusino stating her transfer request had been denied.

56.     Because of her conversations with the FBI, Ms. Fleming was also denied food, telephone access, and access to her personal and legal mail; had her custody classification changed without notice; and was called a "snitch" by BOP staff.  She was even transferred to MDC Los Angeles, in violation of a court order, necessitating a Show Cause hearing.[23]

57.     On top of the retaliation she experienced for cooperating with the FBI investigation, Ms. Fleming faced further reprisal for attempting to report BOP misconduct generally.  In January 2024, Ms. Fleming was warned by various BOP employees that she should expect retaliation from the Acting Warden Art Dulgov and the Associate Wardens, due in part to her continued attempts to notify BOP staff by email about the poor conditions at FCI Dublin.

---

[23] *See* Case No. 23-4155,  ECF No. 155 (Order to Show Cause); ECF No. 163 (Plaintiffs' Response).

58.    On January 31, 2024, these warnings bore out when Ms. Fleming was placed in the Special Housing Unit (SHU) without cause.  Those investigating FCI Dublin at the time told Ms. Fleming that she had done nothing warranting placement in SHU.

59.    Ms. Fleming's cell in the SHU was in even more disrepair than her non-segregation cell.  The cell was freezing cold and filled with standing water, had mold on the walls, and emitted an overwhelming smell of sewage.

60.    Despite multiple requests to the Assistance Health Services Administrator, Mr. Singh, to be removed from this cell, Ms. Fleming was forced to remain in these unsound environmental conditions and denied medical care for seven days.

61.    When she finally was allowed to leave the SHU, Ms. Fleming was suffering from coughing spasms, pain throughout her whole body, headaches, and a viral infection.  She had to be removed from the SHU in a wheelchair, as she could not walk.

62.    During her time in the SHU, her legal and personal property was not inventoried as standard procedure requires, but rather taken to another location at which time two screws were said to be found in her property.  Despite prison policy requiring that any contraband found during such an inventory be photographed, no photo of these screws were taken.  An incident report was then written against Ms. Fleming to retroactively manufacture a rationale for her placement in SHU.

63.    Ms. Fleming experienced other instances of retaliation as well, including being given job assignments in Food Services, despite having restrictions that prohibited her from assignment to this very department.

64.    She was also sanctioned with a housing change despite receiving no disciplinary action that would merit such a change.  To add insult to injury, her unit manager (a BOP employee) told other inmates that this was because Ms. Fleming was experiencing suicidal ideations—a statement that was both false and in violation of Ms. Fleming's privacy.

65.    Additionally, despite, to her knowledge, qualifying for transfer to home confinement under the 2020 Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Ms. Fleming's application was denied without adequate explanation.

**V.    Ms. Fleming Still Has Not Received the Medical Treatment She Needs.**

14

66. Although FCI Dublin has now shuttered its doors, Ms. Fleming has still not received adequate healthcare for her rapidly worsening respiratory conditions caused by the conditions there.

67. Since her transfer from FCI Dublin, Ms. Fleming has been housed at various BOP locations including FPC Bryan, FDC Houston, FTC Oklahoma City, and FMC Carswell. None of these institutions have provided Ms. Fleming the healthcare BOP's own medical staff ordered. Although Ms. Fleming was finally provided access to a pulmonary function test ("PFT") at FPC Bryan, the test was inadequately administered because Ms. Fleming was not advised to refrain from taking her breathing treatments and inhalers prior to taking the test. When PFT tests are administered to establish lung function without treatment, standard practice dictates a patient should refrain from using inhaled medications from anywhere between six and twenty-four hours prior to the test's administration in order to get an accurate result.[24]

68. Additionally, Ms. Fleming has had inconsistent access to necessary medication. During her time at FCI Dublin, there were multiple instances where her prescriptions were not refilled. Additionally, staff would make comments to Ms. Fleming suggesting that the BOP did not want to pay for certain medications, like her eyedrops.

69. This problem continues to this day. For example, on November 20, 2024, Ms. Fleming was set to be transferred to facilities in Florida. However, the U.S. Marshall refused to accept her transfer because she was sent without her medication. When she returned to FTC Oklahoma City, none of her medication, including her three prescribed inhalers, were available to her.

70. The harms Ms. Fleming has suffered—including lack of access to adequate medical care to treat her serious health problems—began at FCI Dublin, but remain ongoing to this day and will likely impact her for the rest of her life. Absent court intervention, Ms. Fleming's condition will continue to decline.

---

[24] *See Pulmonary Function Tests*, National Heart, Lung, and Blood Institute, available at: https://www.nhlbi.nih.gov/science/pulmonary-function-lab/tests, (last accessed January 17, 2025) (explaining when to begin withholding medication prior to different types of PFT tests); *see also Pulmonary Function Testing (PFT)*, Mass General Brigham - Brigham and Women's Faulkner Hospital, *available at:* https://www.brighamandwomensfaulkner.org/programs-and-services/non-invasive-testing/pulmonary-function-testing, (last accessed January 17, 2025) (explaining same).

THIRD AMENDED COMPLAINT
Case No. 3:22-cv-05082-RFL

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(Federal Tort Claim Act – Negligence)**
**(Damages Only)**
**Against Defendant United States**

71.    Ms. Fleming incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

72.    Ms. Fleming brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and Defendants Warden Jusino and Acting Director Lathrop, while working in their official capacities at FCI Dublin and the BOP, respectively.  Ms. Fleming also brings this claim based on acts of FCI Dublin personnel, including prior Warden Art Dulgov and prior Interim Warden N.T. McKinney.  Defendants and FCI Dublin personnel are or were employees of the BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

73.    At all relevant times, Defendant United States hired various correctional and/or administrative personnel at FCI Dublin, including but not limited to wardens, associate wardens, captains, lieutenants, unit managers, counselors, correctional officers, and investigators.

74.    At all relevant times, FCI Dublin personnel, including Defendant Warden Jusino, prior Warden Art Dulgov, and prior Interim Warden N.T. McKinney, held themselves out to incarcerated people at FCI Dublin as correctional and/or administrative personnel with the knowledge, capacity, and ability to provide due care in accordance with standards of reasonable care common and acceptable in the community.

75.    California law applies because that is "the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  Defendants are liable for negligence under California law when they owe the plaintiff a legal duty of care, breach that duty, and proximately cause the resulting injury.

76.    **Duty.**  In California, jailers owe incarcerated individuals a duty of care to protect them from reasonably foreseeable harm while in custody, due to the particular vulnerability and dependence of incarcerated individuals.  *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 250 (2008).  Defendants had a custodial duty to provide and maintain safe and sanitary conditions

16

of confinement at FCI Dublin, and to protect incarcerated people from foreseeable harm. Defendants also had a general duty of care to Ms. Fleming to act as a reasonably prudent person would under similar circumstances.

77. **Breach.**  The United States, individually or through its agents and/or employees acting within the scope of their employment, breached those duties by failing to supervise, operate, and control FCI Dublin in a safe and sanitary manner.  The United States, individually or through its agents and/or employees acting within the scope of their employment, breached its duty of care by forcing Ms. Fleming to live in an unsafe and unsanitary environment contaminated with friable asbestos, black mold, and bird feces, without access to clean water, and without adequate heat.

78. A reasonable administrator would not have exposed Ms. Fleming to the known dangers and indignities of the environmental conditions at FCI Dublin.

79. The United States, individually or through its agents and/or employees acting within the scope of their employment, also breached its duties by failing to remediate these conditions, despite numerous complaints by Ms. Fleming and others, including whistleblower complaints about unsafe and dangerous conditions at FCI Dublin.

80. A reasonable administrator would have remediated the conditions at FCI Dublin, including by bringing the prison into compliance with the minimum standard required by federal regulations governing the more restrictive setting of special housing units.  *See* 28 C.F.R. § 541.31 ("Your living quarters will be well-ventilated, adequately lighted, appropriately heated, and maintained in a sanitary condition.").

81. A reasonable administrator would have remediated the conditions at FCI Dublin, including by bringing the prison into compliance with the minimum standards provided by the "Nelson Mandela Rules," also known as the United Nations Standard Minimum Rules for the Treatment of Prisoners.  These rules—which were adopted by the United Nations' General Assembly in 2015—provide, among other things, that "[a]ll parts of a prison regularly used by prisoners shall be properly maintained and kept scrupulously clean at all times."[25]

---

[25] *Available at:* https://documents.un.org/doc/undoc/gen/n15/443/41/pdf/n1544341.pdf.

THIRD AMENDED COMPLAINT
Case No. 3:22-cv-05082-RFL

82.    A reasonable administrator would have remediated the conditions at FCI Dublin, including by bringing the prison into compliance with the Occupational Safety and Health Administration's standard for sanitation, asbestos, mold, and temperature.

83.    A reasonable administrator would have remediated the conditions at FCI Dublin, including by bringing the prison into compliance with the Clean Air Act, the Safe Drinking Water Act, and the Environmental Protection Agency's regulations on asbestos.

84.    Agents and/or employees of Defendant United States knew or should have known about the ongoing environmental problems of asbestos, mold, bird feces, inadequate heat, and lack of clean water.

85.    Despite notice, Defendant United States, through its employees, did not take reasonable, available measures to abate the risks associated with asbestos, mold, bird feces, inadequate heat, and lack of clean water, in violation of federal and international law and regulations.

86.    At all relevant times, each of the Defendants stood in such a relationship with the other Defendants as to make each of the Defendants liable for the acts and omissions of all other Defendants in regard to their treatment of Ms. Fleming.

87.    The United States, through its employees, also failed to train, retain, and supervise officers as well as monitor and investigate them.

88.    When the employer is aware of its employees' tortious conduct, as it was here, and it ignores or assists in it, retention of employees does not represent legitimate policy considerations warranting discretion.

89.    **Causation.**    The United States' negligence in administering FCI Dublin is a direct and proximate cause of Ms. Fleming's injuries.    The living conditions at FCI Dublin caused Ms. Fleming's health to rapidly deteriorate, leading to and worsening her symptoms, including but not limited to chronic sinusitis, asthma, coughing spasms, loss of sleep, headaches, shortness of breath, extreme fatigue, eye irritation, memory problems, and stomach and muscle pain.

90.    As a direct and proximate result of Defendants' conduct, Ms. Fleming has suffered psychological trauma, emotional distress, anxiety, loss of quality of life and dignity, as well as medical and economic injuries.

91.    Defendant officers' employment at FCI Dublin was essential to their commission of tortious misconduct, which would not have happened absent their employment and privileges.

92.    Defendant officers' conduct was grossly negligent as they showed complete disregard for rights and safety of Ms. Fleming.

93.    It was foreseeable to FCI Dublin personnel that Ms. Fleming was at risk of imminent serious harm, including health problems due to the environmental conditions at the prison.

94.    **Damages.**  Pursuant to the FTCA, Ms. Fleming is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**SECOND CLAIM FOR RELIEF**

**(Federal Tort Claim Act, Intentional Infliction of Emotional Distress)**
**(Damages Only)**
**Against Defendant United States**

95.    Ms. Fleming incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

96.    Ms. Fleming brings this claim against the United States under the FTCA based on acts of Defendant United States and Defendant Warden Jusino and Director Lathrop, while working in their official capacities at FCI Dublin and the BOP, respectively.  Ms. Fleming also brings this claim based on acts of FCI Dublin personnel, including prior Warden Art Dulgov and prior Interim Warden N.T. McKinney.  Defendants and FCI Dublin personnel are or were employees of the BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniform.

97.    California law applies because that is "the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  A person is liable for intentional infliction of emotional distress when the defendant engages in outrageous conduct, when the defendant intended to cause plaintiff to suffer emotional distress or engaged in the conduct with reckless disregard to the probability of causing

plaintiff to suffer emotional distress, the plaintiff suffered emotional distress, and the outrageous conduct was a cause of the severe emotional distress.

98.   Defendant United States, individually or through its agents and/or employees, engaged in extreme and outrageous conduct by forcing Ms. Fleming to live in filth, exposing her to environmental toxins, including mold, asbestos, and feces, and depriving her of access to adequate heating and clean water, while she was incarcerated in their custody.  No human being, regardless of carceral status, should be made to live in such abysmal conditions. This exceeds all bounds of normal human decency.

99.   Ms. Fleming was humiliated and afraid every day she was forced to endure the conditions at FCI Dublin.  Yet her pleas for help through the prison's formal and informal channels were not just ignored, but she faced retaliation for raising grievances.  And despite public scrutiny into the conditions at FCI Dublin, nothing changed.

100.   This conduct was therefore intentional or reckless.  Despite receiving numerous complaints by Ms. Fleming and others, including whistleblower complaints about unsafe and dangerous conditions at FCI Dublin, Defendant United States, individually or through its agents and/or employees, continued to force Ms. Fleming to live in an unsanitary and inhumane environment.

101.   Ms. Fleming's injuries and damages were caused by intentional torts perpetrated by Defendants and FCI Dublin personnel.  Under 28 U.S.C. § 2680(h), Defendant United States is liable for intentional torts perpetrated by its agents, including correctional officers, that concurred within the scope of their employment under color of federal law.

102.   At all relevant times, Defendants were acting under color of law by supervising, disciplining, overseeing, monitoring, controlling, directing, restraining, and imprisoning Ms. Fleming within the scope of their employment for the United States.

103.   Defendants used their authority as law enforcement officers to force Ms. Fleming to live in a filthy, inhumane, and toxic environment.  As a direct and proximate result of Defendants' conduct, Ms. Fleming suffered severe and extreme emotional distress.  Ms. Fleming has suffered

THIRD AMENDED COMPLAINT
Case No. 3:22-cv-05082-RFL

psychological trauma, emotional distress, anxiety, loss of quality of life and dignity, as well as medical and economic injuries.

104.   Pursuant to the FTCA, Ms. Fleming is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**THIRD CLAIM FOR RELIEF**

**(Eighth Amendment, Cruel and Unusual Punishment)**
**(Damages Only)**
**Against Defendant Warden Jusino – Individual Capacity**

105.   Ms. Fleming incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

106.   Defendant Warden Jusino subjected Ms. Fleming to serious bodily harm as defined by the Eighth Amendment when she failed to remediate the known serious environmental toxins that were causing and exacerbating Ms. Fleming's health conditions; failed to otherwise remove Ms. Fleming from the unsafe, unhealthy, and unsanitary environment at FCI Dublin; failed to ensure Ms. Fleming had consistent access to her prescription medication, including inhalers; and failed to ensure that Ms. Fleming was given appropriate treatment, including a comprehensive health exam, despite Ms. Fleming's rapidly worsening breathing problems.   Ultimately, Defendant Warden Jusino delayed, denied, and/or intentionally interfered with the treatment of Ms. Fleming's serious medical conditions.

107.   Ms. Fleming's symptoms constitute serious medical needs under the Eighth Amendment.   Her conditions not only affected her daily activities such as breathing and sleeping, but are the types of conditions a doctor would find noteworthy, and that cause Ms. Fleming chronic and substantial pain.

108.   Defendant Warden Jusino was deliberately indifferent to the substantial likelihood of serious harm to Ms. Fleming.   Despite knowledge of the toxic environmental conditions at FCI Dublin, and their deleterious effects on Ms. Fleming's health, Defendant Warden Jusino did nothing to remediate those conditions, remove Ms. Fleming from the environment, or ensure that Ms. Fleming got appropriate medical treatment.   Warden Jusino caused the worsening of Ms. Fleming's health conditions and the delay in and denial of medical treatment.

109.    Defendant Warden Jusino's actions and failures described here caused Ms. Fleming's physical, emotional, and constitutional harms, and she has a claim for damages for such violations under the Eighth Amendment to the United States Constitution.

110.    This claim for damages is cognizable under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) because it claims the same harm and injury as recognized in *Carlson v. Green*, 446 U.S. 14 (1980) and *Farmer v. Brennan*, 511 U.S. 825 (1994), two recognized *Bivens* contexts.

### FOURTH CLAIM FOR RELIEF
**(Eighth Amendment, Cruel and Unusual Punishment)**
**(Injunctive Relief Only)**
**Against Defendant United States and Director Lathrop– Official Capacity**

111.    Ms. Fleming incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

112.    Defendants have a non-delegable duty to ensure that the conditions of confinement in facilities operated by BOP employees and contractors are constitutionally adequate.

113.    Defendants failed to adequately monitor, oversee, and administer FCI Dublin and violated Ms. Fleming's right to be free from cruel and unusual punishment while she was incarcerated at FCI Dublin by subjecting her to, or failing to remediate, the unsafe and unhealthy environmental conditions including asbestos, mold, bird feces, lack of clean water, and inadequate heating.

114.    Defendants further failed to adequately monitor, oversee, and administer FCI Dublin and violated Ms. Fleming's right to be free from cruel and unusual punishment while she was incarcerated at FCI Dublin by denying her access to adequate medical care to treat her serious health problems.  Defendants acted maliciously, in a manner that is deeply offensive to human dignity and void of penological justification.

115.    Additionally, in acting and failing to act as alleged herein, Defendants subjected Ms. Fleming to unnecessary and wanton infliction of pain and injury, and continue to subject Ms. Fleming to a significant risk of serious harm, by failing to properly evaluate, train, discipline, and supervise custody personnel to maintain a safe and sanitary living environment and provide access

to adequate medical treatment, and by failing to prevent retaliation against Ms. Fleming for complaints of such abuse.

116. Defendants' failures, as described herein, and those of their agents, officials, employees, and all persons acting in concert with them, are the proximate cause of Ms. Fleming's ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment.

WHEREFORE, Ms. Fleming prays for judgment against Defendants as set forth below.

## DEMAND FOR JURY TRIAL

Ms. Fleming demands a jury trial on all claims so triable.

## PRAYER FOR RELIEF

Ms. Fleming prays for judgment against Defendants, and each of them, as follows:

1. A declaratory judgment that the conditions, acts, omissions, policies, and practices described above are in violation of Ms. Fleming's rights under the United States Constitution;

2. An order requiring Defendants, their agents, officials, employees, and all persons acting in concert with them or otherwise to a) ensure Ms. Fleming's living facilities meet constitutionally and statutorily required standards, including but not limited to freedom from mold, asbestos, animal excrement, and other environmental toxins known to cause health issues; b) provide Ms. Fleming a full medical exam; c) provide adequate access to healthcare including prompt prescription refills and assurance that Ms. Fleming's medications are transferred with her in the event of a prison transfer; d) fix the broken administrative grievance process to ensure that individuals like Ms. Fleming can timely and safely grieve harms they experience while in prison; e) comply promptly with the statutory requirements of the CARES Act; f) provide timely and consistent access to confidential attorney calls and visits; and g) protect Ms. Fleming from retaliatory conduct by BOP staff.

3. An order enjoining Defendants, their agents, officials, employees, and all persons acting in concert from continuing the unlawful acts, conditions, and practices described in this Complaint;

THIRD AMENDED COMPLAINT
Case No. 3:22-cv-05082-RFL

4.    An award of compensatory, punitive, and nominal damages to Ms. Fleming in an amount to be determined at trial;

5.    An award to Ms. Fleming of the costs of this suit and litigation expenses to the fullest extent permitted by the law.

6.    An order retaining jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction; and

7.    For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated: February 10, 2025          WILLKIE FARR & GALLAGHER LLP

By:    /s/ Nicholas Reddick
       Nicholas Reddick
       Anika Holland
       Isabella McKinley Corbo
       Remy Carreiro

       Attorneys for Plaintiff
       RHONDA FLEMING

THIRD AMENDED COMPLAINT
Case No. 3:22-cv-05082-RFL

# EXHIBIT 1

TRULINCS  20446009 - FLEMING, RHONDA ANN - Unit: DUB-C-A

-----------------------------------------------------------------------------------------------------

FROM: 20446009
TO: Warden
SUBJECT: ***Request to Staff*** FLEMING, RHONDA, Reg# 20446009, DUB-C-A
DATE: 08/05/2022 06:47:08 AM

To: Warden Jusino
Inmate Work Assignment: na

Warden Jusino,

I saw Dr. Tang last week.  He acknowledged my sensitivity to the mold and asbestos here and at Tallahassee, but he stated that there was nothing that he could do about this ailment.

Due to long term exposure to mold and asbestos contamination at Tallahassee, I contracted a severe case of the virus and was hospitalized for about 2 weeks.  I have not fully recovered because I remain in the environmental conditions which causes my respiratory system to stay in distress.  As Dr. Tang stated, all government buildings are old and have these conditions.

My case manager, Mr. Shirley told me he was processing my transfer to home confinement.  I pray that you will approve this as soon as possible.  I am coughing all night.  I am unable to sleep more than an hour at a time because I wake up coughing and choking.  Unfortunately, my cellmate is disturbed, with concern, most of the night from being able to sleep.

I am going to my mother's home in Houston, which has  3 brand new air condition units, and the air ducts have been cleaned.  I will also be able to receive medical care that I am unable to receive in the BOP.  My mother is 78 and lives alone, in a very nice neighborhood.

Thank you for your assistance in this matter,

Rhonda Fleming
-----FLEMING, RHONDA ANN on 8/4/2022 8:37 AM wrote:

>

Mr. Shirley,

Sir, when I received my property the last institution had sent my BOP files with my property.  You may verify this with the Supervisor of R & D.  I don't know if you need these files to process my transfer to home confinement, but the files have been here since May, with my property.

R. Fleming

EX-D

# EXHIBIT 2

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: DUB-C-A

--------------------------------------------------------------------------------

FROM: 20446009
TO: Warden
SUBJECT: ***Request to Staff*** FLEMING, RHONDA, Reg# 20446009, DUB-C-A
DATE: 08/15/2022 12:33:15 PM

To: Warden on Banes Act and ADA
Inmate Work Assignment: na

Warden Jusino,

I am coughing more and more everyday, with my breathing getting worse. I am in the unit for longer periods because the prison is on RED. This means I am inhaling toxins for longer periods.

I continue to email because I will have to take legal action, through California's Banes Act and the American Disabilities Act. I believe the institution is denying transfer to home confinement because I am suing the BOP.

I have long covid which is a disability under the ADA. It is discrimination not to allow me to have access to public programs like the CARES Act–and discrimination under the ADA includes the legal definition of "deliberate indifference." I have spoke to you about my health problems and emailed many times. My health is worse.

Under the Banes Act, my rights are being violated by the affirmative conduct of placing me at a prison with mold/asbestos, when there is a lawsuit stating that I have respiratory illnesses caused by exposure to mold/asbestos for over 3 years. When I arrived at the prison, I had the virus, for the 3rd time. However, Health Services decided to lie about it due to the lawsuit. Both of my cellmates who have traveled with me from Oklahoma to Nevada, tested positive. I was very sick upon my arrival and yet I tested negative. This was a scam.

In any event, I am sending this to everyone that I believe will help me. Daniel Pauluk died from mold exposure. Google him. I don't want a death sentence for a white collar crime.

Respectfully,

Rhonda Fleming
-----FLEMING, RHONDA ANN on 8/9/2022 10:08 AM wrote:

>

Warden Jusino,

I am suffering with hypersensitivity pneumonitis, long covid, and occupational lung disease. I am unable to recover or stop the damage while continuing to be exposed to mold, asbestos, and bird droppings(toxic contaminates) that are worsening the diseases I am suffering with.

My coughing spasms and wheezing are so bad that I am unable to sleep more than an hour at a time. I wake my cellmate up all night because she is afraid I am choking in my sleep.

Dr. Tang prescribed another inhaler, Wixela Inhub, but it caused the coughing spasms and headaches to worsen, at night and during the day.

I am aware that there is no cure for lung diseases. I need treatment aimed at preventing further exposure to mold/asbestos/excessive bird droppings, contaminates that are causing my disease.

I suffered with the same environmental conditions at FCI-Tallahassee. To be frank, I came close to death and was hospitalized for almost 2 weeks. In the fall, the virus will be back, and I am afraid of contracting it again and the flu. Any illness that harms my respiratory system could be fatal.

Mr. Shirley, my case manager, informed me that he would be processing my transfer to home confinement. Warden Jusino, many of your employees, to include Mr. Shirley, Officer Lewis, Officer Hernandez, and all the inmates in C-unit are alarmed at my coughing spasms. Some think I have the virus. I literally am unable to breath and require a rescue inhaler. If I don't receive proper treatment, this covid induced coughing asthma will turn into classic asthma.

EX-E

# EXHIBIT 3

TRULINCS  20446009 - FLEMING, RHONDA ANN - Unit: DUB-C-A

---------------------------------------------------------------------------------------------------

FROM: 20446009
TO: Warden
SUBJECT: ***Request to Staff*** FLEMING, RHONDA, Reg# 20446009, DUB-C-A
DATE: 09/03/2022 05:16:14 PM

To: Prison Attorney/Task Force
Inmate Work Assignment: na

Warden Jusino,

Am I being denied fair treatment because this prison is under a microscope?

I know that I have to keep informing the prison officials of my medical problems, not because I expect any of you to do anything, but for the day this is before a jury, and all of you are on the witness stand, no one will be able to say, "I did not know Ms. Fleming was ill and needed to be removed for mold/asbestos contamination." This may be criminal civil rights violation by the time this is all over. The Clean Air Act is used to charge criminal acts and I know this prison is in violation.

I suggest someone read, Powell v. Lennon, 914 F.2d 1459, 1463-64 (11th Cir. 1990), this case was against FCI-Tallahassee, the jail on the same grounds. Just like me, the inmate kept begging to be removed from friable asbestos and the warden refused to do so. This was found to be deliberate indifference, the intentional conduct of denying or delaying access to medical care.

I have been crying, literally, shedding tears out of real fear for my life, not to get cancer, for medical relief. It is not adequate care to be "seen" by Health Services. As the Powell case found, the warden had a duty to remove the inmate from the contaminated dorm. Warden Jusino, you will be held responsible, if timely action is not taken to remove me from this facility.

Now that it has been confirmed by Dr. Rutledge that I have a serious respiratory illness, why am I still here suffering, not able to sleep, coughing all night, gasping for air? Yes, I am making a note of this so if I die, my family will take this to the media and tell them how they killed their child, as she begged for help.

I made a request, pursuant to 18 USC Section 3622(a)(3) and 28 CFR Section 570.33(j) and 570.34, for an emergency, 30-day furlough and my medical expenses provided for by the BOP. No one has responded.

After seeing Dr. Rutledge, a nice person, but he probably played down the severity of my medical problems...he does work for the BOP, so if he admitted I have a lung disease, with the most basic of medical devices, I have a serious medical problem.

I did not need Dr. Rutledge to tell me I was very ill. I have been in great health 99% of my life. My health has deteriorated while in BOP custody, period! And, the refusal of the BOP to give me adequate, TIMELY, care, has made the situation worse.

I will be emailing  AUSA Marie Moyle and AUSA Kathryn Drey in Tallahassee. I will be contacting DOJ-Office of Professional Responsibility about them. I keep getting told that I can't get transferred, to get away from toxic mold/asbestos without their permission, but they keep telling me it is up to the prison officials.

I am not playing this game anymore. I did not molest children or kill anyone. I deserve to be treated with dignity and respect, as I have treated the BOP employees. I deserve to be removed from contaminates that are killing me.

Last, I am beginning to believe I am being mistreated because I am a black woman. We are not suppose to "complain." Right now, all the people in charge of whether I live or die, just so happen to be white.

Would a white woman in my position be crying and begging for her life?

Rhonda Fleming
-----FLEMING, RHONDA ANN on 9/2/2022 8:23 AM wrote:

EX-F-1

>

Warden Jusino,

I was seen by Dr. Rutledge and he confirmed that I had lung disease. He asked me several times if I was a smoker. This was

# EXHIBIT 4

TRULINCS  20446009 - FLEMING, RHONDA ANN - Unit: DUB-C-A

--------------------------------------------------------------------------------

To: DUB-InmateToWarden (BOP) >
Subject: ***Request to Staff*** FLEMING, RHONDA, Reg# 20446009, DUB-C-A

To: Still denied acces to grievance forms
Inmate Work Assignment: na

Warden Jusino,

Since I have been at FCI-Dublin, we cannot obtain grievance forms.  I have emailed you about this before.

Today, the unit manager called me, and gave me BP-9 Forms.  I asked for BP-10 and BP-11 forms and he stated that he did not have any.  I also asked for the informal resolution form, that must be filed before the BP-9 and again he stated he did not have any.

At the point that I am refused forms, I have exhausted the remedy process.

R. Fleming
-----FLEMING, RHONDA ANN on 8/19/2022 8:52 AM wrote:

>

Please see below.
-----FLEMING, RHONDA ANN on 8/19/2022 8:52 AM wrote:

>

I need grievance forms.  I do not want to be alone with any BOP employee to ask them for grievance forms because I was assaulted by a BOP employee the last time I requested grievances.

I will be sending this to Warden Jusino and the Dublin Task Force.

R. Fleming
-----FLEMING, RHONDA ANN on 7/5/2022 6:50 AM wrote:

> *Notice of denial of grievance forms.*

Warden,

this morning, once again, our mail has not been picked up to be sent out in today's mail.  I have been incarcerated over 14 years and I have never experienced, while in general population, the denial of correspondence.  Yesterday, I reported this problem to the AW on yesterday when both of you came to the quarantine unit.

I have no reason to believe that the other mail, that may have been taken out of this building, was actually mailed.

I believe there is some intentional conduct here for denying us correspondence.  We are unable to report this, by mail, to the Regional or Central offices.  Nor have I had access to grievance forms, to exhaust my remedy process, before taking this matter to the courts.

I have legal mail that needs to be mailed.  I need stamps, today, although the possession of stamps is useless if the mail is not delivered to the post office.

I have informed you and other staff members of this strange problem, several times, by electronic staff request.  Mr. Park, with Health Services, and the captain told us we would be denied correspondence while in quarantine, and they continue to make good on their pronouncement.

I have no other recourse but to take this to a federal court after I am released from quarantine.

R. Fleming

*EX-I-2*

# EXHIBIT 5

TRULINCS  20446009 - FLEMING, RHONDA ANN - Unit: DUB-C-A

--------------------------------------------------------------------------------

FROM: 20446009
TO: Warden
SUBJECT: ***Request to Staff*** FLEMING, RHONDA, Reg# 20446009, DUB-C-A
DATE: 09/14/2022 02:01:41 PM

To: Still denied acces to grievance forms
Inmate Work Assignment: na

Warden Jusino,

I am not just "frustrated" with the process of for obtaining a transfer.  I have been diagnosed with lung disease.  I live in fear of a painful death from cancer.  I am doing what anyone would do that knows how dangerous asbestos can be to the lungs.  Until last week, the prison was still buffing the floors, forcing me to inhale friable asbestos.  My cough is not a "new" medical problem. I have told you about it in person and in many of these electronic requests.  The BOP's own physician has stated I have lung disease.  This has been going on for a long time.  I should not have been sent to a prison with mold/asbestos contamination, when I am litigating against the BOP about my near death last year from the Delta virus.  The former warden at Tallahassee ignored my pleas for protect, my friend Joneka Treece died, and I am still suffering from long covid and mold/asbestos contamination.

As for the offer of the grievances, my understanding of the grievance process is that the inmate starts with an 8 1/2 form, not a BP-9.  I asked for the 8 1/2 form and was laughed at by Mr. Busio.  I gave up on obtaining the correct form.  It is physically dangerous for an inmate to keep asking for grievances.  Mr. Busio knew that  submitting a BP-9, without first submitting an 8 1/2, the BP-9 would be rejected.  Mr. Busio denied me access to the grievance process and that is okay.

The furlough request is appropriate for medical reasons.  You are aware that I have lung disease.  You know your prison has mold/asbestos/bird contamination, which aggravates the disease I have.  I am a disabled inmate and this facility is not suitable. If you intend to approve my transfer to home confinement, why not grant a 30-day medical furlough, until the home confinement transfer is completed?  This is 100% your call and not the decision of Mr. Shirley or anyone else.  I am your responsibility.

As for the issue of racial discrimination, I am an old inmate by BOP standards and there is plenty of racial discrimination throughout the BOP.  I am a fair person.  But, I have enough common sense to know that just because I treat people fairly, does not mean I will get it in return.

The bottom line is that if you had any concern about me developing cancer or suffering with a fatal asthma attack, I would not still be in your prison.  As a warden you can obtain a transfer in one day, if you choose to.  I have a serious medical condition that has become worse while in your care and have repeatedly asked you to remove me from the contaminates here at FCI-Dublin.

Additionally, I am a real sex abuse victim.  I had no relationship with any employee.  I reported sexual misconduct of Scott Born, who was later prosecuted.  Before he was prosecuted, I was beaten and sexually assaulted by all white BOP employees, and it was videotaped.  Then they lied about it, but the videotape showed they lied.  The Regional Director expunged the false incident reports.  I continue to make request for the status of the investigation against these sex offenders.  So, yes, I am emotionally overwrought with the wrongs that BOP employees have done to me, and continue to do to me, even as I type this response to you.

I will not be bothering you with anymore request for help.  They have fallen on deaf ears.

R. Fleming
-----Warden on 9/14/2022 12:32 PM wrote:

*[handwritten: → Response, but no offer of BP-8!]*

>
Our informal inquiry reveals you were provided ten BP-9 forms from your Unit Team after your 8/19/22 message, and that when you were offered BP-10 and 11 forms a few days later, you indicated you no longer had a need for these forms.  If your situation changes and you need more forms, please ask your Unit Team.  If you have any formal complaints about your access to Administrative Remedy forms, please utilize the Administrative Remedy Process.

--------------------------------------------------------------------------------

From: ~^! FLEMING, ~^!RHONDA ANN <20446009@inmatemessage.com>
Sent: Friday, August 19, 2022 3:19 PM

*[handwritten: EX-I-1]*

# EXHIBIT 6

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Western Regional Office<br>Attn: Regional Counsel<br>7338 Shoreline Drive<br>Stockton, CA 95219 | Rhonda Fleming ZE44609<br>5701 8th Street<br>Dublin, CA 94568 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | 9/22/65 | widow | Ongoing violation | |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

I am an inmate held at FCI-Dublin, inhaling mold/asbestos contamination. The facility has exposed friable asbestos, excessive toxic mold, and bird feces throughout the prison. Any inmate that complains is retaliated against. The FBOP officials have failed to protect me from these environmental contaminates.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

N/A

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

I am suffering with headaches, body pain, runny nose, fatique, and breathing problems. I am also suffering with anxiety and fear of developing cancer or other diseases due to exposure to asbestos.

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State and Zip Code) |
|---|---|
| N/A | |

12. (See instructions on reverse). AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| $0 | $2,000,000.00 | $0 | $2,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| | N/A | 7/11/2022 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

P5-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

 

11    EX-C